ACCEPTED
15-25-00182-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/17/2025 10:01 AM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/17/2025 10:01:36 AM
CHRISTOPHER A. PRINE
Clerk

**KENNETH COLLIER, TANESHU COLLIER, TRELS HOME FOR CHILDREN, AND TRELS HOME LLC**

*Appellees*,

v.

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION, CECILE ERWIN YOUNG, EXECUTIVE COMMISSIONER, LAURA CASTILLO, DIRECTOR OF HEIGHTENED MONITORING, AND DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES**

*Appellants*.


**Appeal No. 15-25-00182-CV**

**In the 15ᵗʰ Court of Appeals**

**Austin, Texas**


## MOTION FOR TEMPORARY ORDER UNDER TRAP 29.3


*[ORAL ARGUMENT REQUESTED]*


FERGUSON LAW PRACTICE, PLLC
1017 RR 620 S, Ste. 222
Lakeway, Texas 78734
765/860-3513 (telephone)
737/208-1931 (facsimile)
Email: john@fergusonlawpractice.com

*Identity of Parties and Counsel*

The following is a list of all parties and all counsel in this matter:

Appellees in this matter are Kennth and Taneshu Collier and TRELS Home

for Children and TRELS Home LLC.  The attorney representing Appellees is:

FERGUSON LAW PRACTICE, PLLC
1017 RR 620 S, Ste. 222
Lakeway, Texas 78734
765/860-3513 (telephone)
737/208-1931 (facsimile)
Email:  john@fergusonlawpractice.com

Appellant in this matter is Texas Health and Human Services Commission,

Cecile Irwin Young, Executive Commissioner, Laura Castillo, Director of

Heightened Monitoring, and Department of Family and Protective Services. All

Appellants are represented by the Texas Attorney General, Attn: Kelsey Hanson, PO

Box 12548, Austin TX 78711-2548, T: 737-224-1244, E:

Kelsey,hanson@oag.texas.gov.

*Table of Contents*

Page 4 -10 – Appellees' Motion

Page 11 – Certification

Page 12 – Appendix

Page 13 – Certificate of Service

**APPELLEE'S MOTION FOR TEMPORARY ORDERS UNDER T.R.A.P. 29.3**

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES Kenneth Collier, Taneshu Collier, TRELS Home for Children and TRELS Home LLC, "Appellees herein, and files this Appellees' Motion for Temporary Orders Under Tex. R. App. Proc. 29.3 and in support thereof, shows the Honorable Court the following:

**FACT AND PROCEDURAL BACKGROUND**: Appellees run a home for children and their mission is to "ensure [children have a] place of refuge dedicated to serving the tangible, spiritual, and emotional needs of disadvantaged youth in the state foster care system; their main focus is providing Trauma-Informed Treatment/Therapy, providing fostering support, mentoring, and volunteering services"[1].

As the Court is aware Appellees filed suit against Appellants alleging that Appellant's designation of a heightened monitoring[2] condition on Appellee's two residential treatment

---

[1] *See also*, the **Court Reporter's Record** at pages 29 (Lines 21-25) and page 30 (Lines 1-12).

[2] "***Heightened monitoring***", as its name implies, is a program where the frequency with which HHSC and DPS visit, inspect, review, interview and task a regulated entity increases severely. For example, in this case specifically: Since March of 2025, HHSC and DFPS heightened monitoring staff conducted 19 inspection visits to TRELS. Each visit requires the inspector to review staff and child files to inspect for compliance with standards listed in the heightened monitoring plan, evaluate TRELS for compliance with background check rules, review serious incident reports, conduct a walk-through inspection of the operation, as well as interview a minimum of one staff member, and if necessary, children in care. To date, 5 children in care have been interviewed as part of the inspection visits. These TRELS operations have a combined full capacity of 25 children resulting in over 20 percent of its population already being interviewed by the agencies. In addition to increased interviews, visits and oversight, TRELS must have all child placements approved by the Associate Commissioner or Regional Director for Children's Protective Services (CPS). TRELS with several conditions outlined in the heightened monitoring plans. TRELS Home for Children has 17 plan tasks while TRELS Home LLC has 19 plan tasks. Each task contains several components including but not limited to requiring Plaintiffs to create training material and re-train staff, conduct their own weekly unannounced onsite visits after hours, and develop or enhance current policy/procedures. In addition, Plaintiffs are required to participate in a monthly meeting held by DFPS and HHSC heightened monitoring staff to discuss the status and compliance with plan tasks.

Conversely, in the absence of a heightened monitoring designation HHSC's typical monitoring and/or audit procedure and frequency are drastically minimized. The frequency of regulating a licensed facility within the first 12 months after the issuance of a full license requires HHSC to conduct at least one unannounced monitoring inspection every six months and evaluate for compliance with all minimum standards within 12 months (Child Care Handbook 4131). Typically, that means an HHSC inspector would conduct two unannounced visits during a one-year period. After the first 12 months following the issuance of a full license, the inspector conducts an unannounced monitoring section at least annually (Human Resource Code 42.044(b)).

centers[3] was unlawful because Appellant's statutory power, their regulatory power (by their own administrative code provisions), and even their internal operational handbook are all clear that a designation of "heightened monitoring" must be placed on a license "at issuance" and cannot be placed on an operation after issuance unless there is an intense showing of a "high rate of contract and standards violations"[4] over a longer period of time. As part of the record, the Court will see that Appellee's operations did not have a high rate of any violations. One location (known as the "Hondo" location) had zero violations[5] when it was placed on heightened monitoring, and the other location had six minor deficiencies found across fifty-four inspections and 10,358 standards evaluated[6] (the "Callahan" location) when it was placed on heightened monitoring[7]. Appellants admit the only reason they placed Hondo and Callahan on heightened monitoring was because Taneshu Collier (Plaintiff and owner of the subject residential treatment centers) was the owner of a third residential treatment center (not subject of this lawsuit) that is rightfully on heightened monitoring. **So, Appellants admit the only reason they placed Hondo and Callahan on heightened monitoring is because they have the same "controlling person" and not for any other reason[8].** Appellants enabling statute, its own administrative code provisions, and even its own handbook require a designation of heightened monitoring due to "controlling person" association to occur "at issuance". By the time Appellants placed the heightened monitoring designation on the Hondo and Callahan locations they had been permitted at one location for a year and at the other for six months. As such, the designations were unlawful.

---

[3] *See* the **Reporter's Record** at Page 29, Lines 4-12.
[4] Stukenberg v. Abbott, 509 F.Supp. 3d 683 at 794 (US Dist. Ct. – Copus Christi) (2020).
[5] **Reporter's Record**, Page 35, Lines 11-15
[6] This data is directly from HHSC's compliance dashboard.
[7] *See also*, **Reporter's Record**, Page 81.
[8] **Reporter's Record,** Page 33, Lines 2-12.

On October 15, 2025, the trial court agreed with Appellee's that the designations were unlawful. The trial court found that it had jurisdiction over the case and issued a temporary restraining order disallowing Appellants from continuing heightened monitoring processes against Appellees. That order is attached hereto as **Exhibit A**. The order clearly describes the irreparable injury that will occur if the heightened monitoring continues and the order concludes the injunction must issue to prevent further irreparable injury. The order also finds that Appellees have a probable right to relief. As this Court notes in Texas Education Agency v. Houston Independent School District, 609 SW3d 569 (Tex. App. – Austin) (2020) (**hereinafter "*TEA*"**): "By its very nature, a request for injunctive relief involves a party's assertion that if the opposing party's actions are not enjoined, it will suffer irreparable harm. In this particular case, the trial court has concluded that the District made a sufficient showing to establish a probable right to recovery on its ultra vires claims. It further concluded that the District made a sufficient showing that the alleged ultra vires conduct would cause irreparable harm because once the Commissioner performs a final administrative act, even if it is ultra vires, it would not be reviewable by an appellate court". *Id* at 577. Here Appellees have the exact same circumstances. The trial court did in fact make all those very same findings as described by the *TEA* court.

On November 3, 2025, the State filed a notice of appeal. The written orders challenged (one denying State's plea to jurisdiction and the other granting Plaintiffs' temporary injunctions against the State) did not issue until a day later - on November 4, 2025 (appellees point this out because it is not possible Appellants challenged the form of the order or its contents because the orders did not exist when Appellants appealed the October 15, 2025 ruling of the trial court). The State's notice refers to the automatic stay of the trial court proceedings and of course mentions the suspension of the temporary injunction order.

The State wasted no time; within three days, on November 7, 2025, at 5:30 pm (approx.), the State called upon droves of investigators to simultaneously attack both of Appellees' facilities (which are in completely different cities) on a Friday night at 5:30 pm. Both teams of investigators stated to Plaintiffs' employees (and one of them "Mark Stehly" told undersigned counsel over the phone) that they were instructed by "management" to simultaneously descend upon Appellees' facilities immediately because "the order had been lifted". Undersigned counsel asked Robert Behles what other acute emergency required a simultaneous and surprise descension on Appellees' facilities at 5:30 pm on a Friday night and there was no other explanation given. So, the State, with no justification other than raw revenge, coordinated a joint attack on Appellees' facilities nearly immediately upon filing the notice of appeal. The Appellees' and their employees' declarations recounting all of this are appended hereto at **Ex. B**. The surprise and unwarranted inspections disrupted the children in care and the staff. For example, Chemise Landry notes the children were preparing for dinner and bed when the State made their surprise entry and it disrupted the children and they found it "distressing and confusing" (*See,* **Ex. B, Chemise Landry Declaration**). As previously stated, the subject operations were unlawfully placed on heightened monitoring (and only due to common ownership and not due to any previous misconduct or standards violations at Hondo or Callahan). The October 15, 2025, oral trial court ruling granting the temporary injunction had been in place for a mere two weeks at the time the State performed the emergency and baseless invasion. In fact, on October 29, 2025, HHSC conducted its normal announced annual licensing inspection at the Hondo facility, so the State had inspected the Hondo facility within the last eight days before the November 7, 2025, concerted invasion. **The point is, there was no emergency and there was no need to orchestrate a coordinated attack on the facilities other**

**than pure revenge for Appellee's standing up to HHSC and DFPS and calling them out for violations of the law.** There was no other emergency need (or any need at all) to visit these facilities other than for revenge. Then, unbelievably, on November 13, 2025, the State showed up again (*See*, **Ex. B** at Ken Collier's Declaration). This time the State said they had to video record everyone. The State had never done that before and it was merely to harass Appellees. There is no other justification for this behavior beyond harassment. The very second the State filed its notice of appeal it sought revenge and it harassed Appellees for no reason at all.

The Court cannot possibly let this go. The State should be held accountable for these egregious actions. Just because they are the State does not mean they get to callously live above the law and disregard the Court's lawful orders. We ask this Court to recognize that the temporary injunction order should not superseded by the State's November 3, 2025, notice of appeal. We ask this Court to use its power under Tex. R. App. Proc. 29.3 to order the temporary injunction to stay in effect pending this appeal. Appellees (and more importantly the children in their care) are suffering from the State's malicious conduct. Now, the State has even begun interrupting placements of children in need that would ordinarily be cared for by Appellees (*See*, **Ex. B** – Declaration of Ken Collier). The State has no interest in protecting and housing kids, the State simply wants to punish Appellees.

**LEGAL BASIS**: The *TEA* court reinstated the lower court's temporary injunction pending the outcome of the State's appeal recognizing that based on the trial court's very findings in the temporary injunction order it was necessary and warranted that the appellate court maintain the status quo and prevent super-cession of the order. The circumstances in this case are identical to *TEA*, but Appellees would argue the State's conduct is even more egregious and vengeful here as discussed above. (*See also*, State v. Texas Democratic Party, 631 SW3d 337

8

(Tex. App. Houston) (2020) ("where appellees allege irreparable harm, under the binding authority of the Austin Court, we must exercise our inherent authority under Rule 29.3. We conclude that such a temporary order is necessary in this case to preserve the parties' rights. Accordingly, we grant appellees' motion for temporary orders under Rule 29.3 and order that the trial court's temporary injunction remains in effect until disposition of this appeal. No security is required from appellees because the State has not shown that it will incur monetary damages as a result of the injunction."). Additionally, as this Court put quite eloquently in Texas Health and Human Services Commission v. Sacred Oak Medical Center, LLC, 2021 WL 2371356 (Tex. App. Austin) (2021): ". . . [O]ur point in [*TEA*] . . . [is] that we have the power to preserve a party's right to judicial review of acts that it alleges are unlawful and will cause it irreparable harm." Indeed, the Court does have this power, and this request presents a worthy situation for protection. Appellees have spent considerable time and money in stopping Appellants' illegal activity. The trial court agreed the activity is illegal and visits irreparable harm on Appellee's. The trial court agrees that Appellees will likely prevail in this lawsuit. Appellants are merely visiting revenge on Appellees. There is no danger to children in Appellees' care excepting only that danger from the State's unwarranted (and now videorecorded) interruptions of children's lives for the mere purpose of harassment and punishment.

**OTHER IRREGULARITIES**: Attorney for the State, as the Court will note in the record[9], represented numerous times during the temporary injunction hearing on October 15, 2025, that no order concerning discovery were necessary because the State had agreed to cooperate and provide the discovery Appellees requested without an order. This was always a

---

[9] **Reporter's Record**, Page 7, Lines 3-9 for example.

9

misrepresentation, and the State knew it would file this appeal thus abating the trial court proceedings and all discovery obligations.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellees herein, respectfully prays that this Court exercise its power and authority under Tex. R. App. Proc. 29.3 to order that the temporary injunction granted to Appellees remain in effect during the pendency of this appeal to prevent the very irreparable harm found by the trial court while this appeal takes place.

Respectfully submitted,

Ferguson Law Practice, PLLC
1017 RR 620 S, Ste. 222
Lakeway, TX 78734
Office: (512) 996-5407

By: /s/ John Ferguson
Kyle Ann Ferguson
Texas Bar No. 24065223
Email: kyle@fergusonlawpractice.com
John Ferguson
Texas Bar No. 24066597
Email: john@fergusonlawpractice.com
Meghan Rudnai
Texas bar No. 24086875
Email: meghan@fergusonlawpractice.com
Attorneys for Plaintiffs

## Certification

I hereby certify that I have reviewed the above Petition for Writ of Mandamus and have concluded that every factual statement in the said petition is supported by competent evidence included in the appendix and/or record.

*/s/ John Ferguson*

*Appendix*

- **Ex A** – Copy of the trial court's Order Granting a Temporary Injunction

- **Ex. B** – Declarations of the Appellees' operations' employees who witnessed the State's November 7, 2025 and November 13, 2025 inspections.

## Certificate of Service

A copy of this notice is being filed with the appellate clerk and has been delivered, or will be delivered at the time of this notice's filing, to each court reporter responsible for preparing the reporter's record in accordance with rule 25.1(e) of the Texas Rules of Civil Procedure. I certify that a true copy of this Petition for Writ of Mandamus was served in accordance with rule 9.5 of the Texas Rules of Appellate Procedure on each party or the attorney for such party indicated below by e-filing same to:

Texas Attorney General
Attn: Kelsey Hanson
PO Box 12548
Austin TX 78711-2548
T: 737-224-1244
E: Kelsey,hanson@oag.texas.gov.

*/s/ John Ferguson*
Attorney for Relators

11/04/2025 05:16:46 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-004379

CAUSE NO. D-1-GN-25-004379

| | | |
|---|---|---|
| KENNETH COLLIER, TANESHU COLLIER, TRELS HOME FOR CHILDREN, AND TRELS HOME LLC | § § § § | IN THE DISTRICT COURT |
| *Plaintiffs*, | § § | 345th JUDICIAL COURT |
| v. | § § § | |
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION, CECILE ERWIN YOUNG, EXECUTIVE COMMISSIONER, LAURA CASTILLO, DIRECTOR OF HEIGHTENED MONITORING, AND DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES | § § § § § § § § § § | TRAVIS COUNTY, TEXAS |
| *Defendants*. | § § | |

## ORDER FOR ISSUANCE OF TEMPORARY INJUNCTION

On October 14, 2025, the Court heard Plaintiffs' Application for Temporary Injunction in this cause. Plaintiffs, and Defendants appeared through their counsels of record.

The Court finds that-

1. Defendants intend to continue imposing the heightened oversight and scrutiny and burden of Heightened Monitoring on Plaintiff without proper administrative or statutory authority.

2. Unless this restraint is ordered immediately, Plaintiffs will continue to suffer irreparable injury, because under heightened monitoring (as described in Plaintiff's petition and as described in testimony at the temporary injunction hearing) the incredible frequency of the inspections and investigations on Plaintiff's child care centers by the Defendants have cost lost personnel, interruption to children, interruption to operations, lost placements, and other undue monetary impediments and Plaintiffs have no other legal remedy that can be obtained and effected

before the injury continues to occur for many reasons including but not limited to the fact that these investigations occur at least weekly;

3. Plaintiffs will probably be awarded a recovery in this cause;

4. If Defendants' threatened conduct as described above is not enjoined during the pendency of this suit, Plaintiffs will be injured because: they will continue to suffer the undue expense, turnover in personnel, distraction from ensuring the well-being of children in its care, and undue administrative burden from the unlawful designation of Heightened Monitoring made by Defendants against Plaintiff;

5. Plaintiffs have exercised due diligence in prosecuting the underlying claim in this cause;

6. Plaintiffs' injury will outweigh any injury to Defendants that may occur on issuance of this injunction;

7. The injunction will not disserve the public interest; and,`

8. Plaintiffs' bond in the amount of $500.00 will fully protect Defendant's rights during the pendency of this action.

9. In particular, the Court finds that Defendants' retroactive designations of heightened monitoring on Plaintiffs' licenses were unlawful. Defendants' violations give rise to Plaintiffs' causes of action against Defendants, for which Plaintiff has a probable right to relief and has suffered probable, imminent, and irreparable injury. In addition, the Court finds that damages are not adequate to remedy Defendants' violations of retroactively designating heightened monitoring on Plaintiffs' licenses, and therefore, Plaintiffs lack an adequate remedy at law that will give it complete and final relief.

Accordingly, it is ORDERED that Plaintiffs' Application for Temporary Injunctions is GRANTED.

It is therefore ORDERED that a temporary injunction issue, operative until judgment is entered in this cause, enjoining Defendants from continuing to impose Heightened Monitoring procedures and processes on Plaintiff, provided that, before the issuance of the injunction, Plaintiffs must post bond in the amount of $500.00, payable to Defendants, conditioned and approved as required by law. And furthermore, it is Ordered that if either party appeals this judgment to the Court of Appeals and does not fully prevail it shall pay $10,000.00 to the nonappealing party.

It is further ORDERED that the foregoing cause of action is set for trial on January 5, 2026, at 9:00 a.m.

SIGNED on November 4, 2025, at 1:42 p.m.

_____
JUDGE PRESIDING

**EXHIBIT**

**<u>VERIFICATION AND DECLARATION OF KEN COLLIER</u>**

Kenneth Collier, states under penalty of perjury:

"My name is Kenneth Collier. I am above the age of eighteen years, and I am fully competent to make this unsworn declaration. I have personal knowledge of the facts contained in this unsworn declaration and all such facts are true and correct.

I am the co-owner of TRELS. I am deeply concerned and disappointed about the events that transpired on Friday evening, November 7, 2025, when Heightened Monitoring showed up at two of our different facilities simultaneously. According to the HM representatives, and I quote, *"we received a text that said to go and go now."* It is clear that these actions were not coincidental but rather a coordinated effort intended to target our facilities following a recent ruling that did not align with their desired outcome.

In addition to these inspections, we had two separate children we accepted placement for on November 7, 2025. However, the children never came into our care. It's a rare occurrence that hasn't happened for a very long time. Once we have gotten to the stage where we have accepted placement of children, they have come. While I cannot state with any certainty that these placements failing to materialize is another form of retaliation, I can say that the timing of it all is highly concerning.

On November 13, 2025, HM representatives arrived to inspect our Callahan location. Shortly after their arrival my staff notified me that HM representatives were recording them and advised that they were instructed by their supervisor to record the entire inspection. No other inspection in the history of any of our facilities has been recorded with HM or any other inspector. I am not aware of any Minimum Standard or policy which recommends recording inspections and staff. Our staff complied with being recorded but the request and conduct of HM is alarming and intimidating.

It's hard to understand these actions. Continued retaliation against us would not only jeopardize the livelihoods of approximately 70 employees but would also displace around 45 children who rely on our care and stability.

This demonstrates a concerning lack of procedural integrity and reinforces the appearance of targeted retaliation.

My name is Kenneth Collier my date of birth is April 16, 1981, my address of record is 8121 Tranquil Lake Way, Conroe, Montgomery County, Texas 77385. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, State of Texas, United States, on November 14, 2025.

By: _Ken Collier Sr_____

<span style="font-size:small">Ken Collier Sr (Nov 14, 2025 11:39:04 CST)</span>

Kenneth Collier

# 25.11.14 Collier, Kenneth

Final Audit Report 2025-11-14

| | |
|---|---|
| Created: | 2025-11-14 |
| By: | Kyle Ferguson (kyle@fergusonlawpractice.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAEB-cH8LmdmXK0EeoESCxyZaBerANXD1k |

## "25.11.14 Collier, Kenneth" History

Document created by Kyle Ferguson (kyle@fergusonlawpractice.com)
2025-11-14 - 5:13:26 PM GMT- IP address: 70.113.44.79

Document emailed to Ken Collier Sr (kcollier@th4c.org) for signature
2025-11-14 - 5:13:30 PM GMT

Email viewed by Ken Collier Sr (kcollier@th4c.org)
2025-11-14 - 5:35:09 PM GMT- IP address: 96.65.249.102

Document e-signed by Ken Collier Sr (kcollier@th4c.org)
Signature Date: 2025-11-14 - 5:36:05 PM GMT - Time Source: server- IP address: 96.65.249.102

Agreement completed.
2025-11-14 - 5:36:05 PM GMT

Adobe Acrobat Sign

**EXHIBIT**

**<u>VERIFICATION AND DECLARATION OF <mark>TANESHU COLLIER</mark></u>**

Taneshu Collier, states under penalty of perjury:

"My name is Taneshu Collier. I am above the age of eighteen years, and I am fully competent to make this unsworn declaration. I have personal knowledge of the facts contained in this unsworn declaration and all such facts are true and correct.

What was meant to be a joyful day celebrating my granddaughter's third birthday quickly turned into one of the most distressing moments I've experienced as an operator and advocate for children in care. I am the owner of TRELS.

On the evening of November 7, 2025, while surrounded by family at a water park, my phone began to ring repeatedly. Managers from our facilities were calling in a panic—Heightened Monitoring representatives had shown up simultaneously and unexpectedly. This was alarming, as a standing court order specifically prohibits HM from visiting our facilities. Hoping it was a misunderstanding, I stepped away from my family celebration to confirm. Unfortunately, it was not.

I spoke with the representative at our Callahan location, who told me she was simply following orders. When I requested to speak with her supervisor, the supervisor stated that they were directed to conduct an HM visit that very evening. Within minutes, I received another call—this time from our Hondo facility—reporting that an HM representative had arrived there as well. We were later told that a text message had gone out instructing staff to visit both sites that night.

The representatives on-site were courteous and patient, giving us time to contact our legal counsel. Our attorneys were clear—they had received no notice of any change to the existing court order. Following their advice, we initially denied access. However, around 5:36 PM, I received a call from State Office informing me that they had the "right" to proceed with the visit. During that call, I felt pressured, cornered, and frankly, bullied. When I asked my attorney whether refusing access could jeopardize our license, he said yes.

In that moment, my heart sank. All I could think about were the children in our care—their safety, their stability, their sense of belonging. If our licenses were revoked, where would these 45 children go? How would they cope with another disruption, especially right before the holidays? The thought was unbearable. I chose to allow the visits to continue, not because I agreed, but because protecting those children outweighed everything else.

It is painful and disheartening that, even after a court ruled the state's prior actions unlawful, the same office would disregard that order and proceed as if nothing had changed. It felt less like oversight and more like intimidation—a deliberate ambush at multiple locations on a Friday evening. <mark>Our Hondo location had never received a deficiency before heightened monitoring began</mark>. Licensing was just at our Hondo location on October 29, 2025, for our annual inspection

*Declaration of Taneshu Collier*
Page 1 of 2

which evaluated seven sections of the minimum standards and spanned the course of five hours. We work tirelessly to care for children who have already endured so much. I cannot comprehend why the state would coordinate further disruption to their lives on a Friday evening. They deserve stability, compassion, and fairness from the very system designed to protect them.

I have always believed that the state and providers should work together for the sake of the children we serve. Yet in moments like this, it feels as though our dedication and integrity are being weaponized against us. The state has violated the injunction on at least two separate occasions prior to November 7, 2025, when placement approvals were improperly referred to staff in heightened monitoring for approval. We will continue to stand firm in our commitment to doing what is right for our youth, even when it comes at a personal or emotional cost.

All we ask is that those in positions of power do the same—with integrity, transparency, and genuine concern for the children whose lives hang in the balance.

My name is Taneshu Collier my date of birth is 07/01/1977, my address of record is 8121 Tranquil Lake Way Conroe Tx 77385. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Montgomery County, State of Texas, United States, on November 11, 2025.

By: _____
Taneshu Collier

# 25.11.11 Collier, Taneshu Declaration

Final Audit Report

2025-11-12

| | |
|---|---|
| Created: | 2025-11-11 |
| By: | Karen De Alejandro (karen@fergusonlawpractice.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAcq3CrusZWTRxzIVwfYOEIi295w18YRc0 |

## "25.11.11 Collier, Taneshu Declaration" History

Document created by Karen De Alejandro (karen@fergusonlawpractice.com)
2025-11-11 - 10:33:56 PM GMT

Document emailed to Taneshu Collier (admin@th4c.org) for signature
2025-11-11 - 10:34:00 PM GMT

Email viewed by Taneshu Collier (admin@th4c.org)
2025-11-12 - 2:23:11 PM GMT

Document e-signed by Taneshu Collier (admin@th4c.org)
Signature Date: 2025-11-12 - 2:23:25 PM GMT - Time Source: server

Agreement completed.
2025-11-12 - 2:23:25 PM GMT

Adobe Acrobat Sign

**EXHIBIT**

**<u>VERIFICATION AND  DECLARATION OF CHEMISE LANDRY</u>**

Chemise Landry, states under penalty of perjury:

"My name is Chemise Landry. I am above the age of eighteen years, and I am fully competent to make this unsworn declaration. I have personal knowledge of the facts contained in this unsworn declaration and all such facts are true and correct.

I am employed as the Assistant Program Director for our Callahan Location.  On Friday evening, November 7, 2025 around 5:00 p.m. I received a text notifying me that a Heightened Monitoring was present for an inspection at the Callahan location of TRELS Home for Children.  The most recent information I had led me to believe Heightened Monitoring would no longer occur at our location.  Our Program Director, Jennifer Smith informed me that the monitoring staff said heightened monitoring had been reinstated and they needed to conduct an immediate visit.

I was at home preparing to leave for a dinner to celebrate my son's 20th birthday with our family. I had to stop my family plans so I could begin compiling the information requested by Tara, the Heightened Monitoring staff on site. I then received notice that Tara left the facility and was stopping her visit. I began to plan for joining my family for the birthday celebration.  About 20 minutes later, I learned that Tara was back on site to continue to her inspection.  I again stopped what I was doing to finish preparing all of the requested documentation.

I was not aware that HM would be resuming at Callahan.  The children in our care were at the facility, preparing for dinner and bed.  They had to pause their routine activities so a walkthrough could be conducted.  This disrupted their routine. The second visit lasted about an hour.  Overall, it was very distressing and confusing.

Unfortunately, this situation also disrupted my personal family plans and caused me unnecessary stress and confusion. Had anyone from Heightened Monitoring discussed the situation with us we could have been better prepared.  To my knowledge, no citations were issued as a result of this inspection.

My name is Chemise Landry. My date of birth is March, 03, 1984, my address of record is 24530 Forest Path Court, Spring, TX, Harris County, Texas 77373.  I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, State of Texas, United States, on 11/11/25                      .

By: _____
<span style="font-size:small">Chemise Landry (Nov 11, 2025 11:44:15 CST)</span>
Chemise Landry

# 25.11.11 Landry, Chamise Dec

Final Audit Report                                                                 2025-11-11

| | |
|---|---|
| Created: | 2025-11-11 |
| By: | Kyle Ferguson (kyle@fergusonlawpractice.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAg1GsSstcN11EVfSxJ0WrhSh4jFSSgLO2 |

## "25.11.11 Landry, Chamise Dec" History

Document created by Kyle Ferguson (kyle@fergusonlawpractice.com)
2025-11-11 - 5:41:01 PM GMT- IP address: 70.113.44.79

Document emailed to CHEMISE LANDRY (clandry@th4c.org) for signature
2025-11-11 - 5:41:05 PM GMT

Email viewed by CHEMISE LANDRY (clandry@th4c.org)
2025-11-11 - 5:41:26 PM GMT- IP address: 66.170.203.75

Document e-signed by CHEMISE LANDRY (clandry@th4c.org)
Signature Date: 2025-11-11 - 5:44:15 PM GMT - Time Source: server- IP address: 66.170.203.75- Signature captured from device with phone number XXXXXXX4021

Agreement completed.
2025-11-11 - 5:44:15 PM GMT

**EXHIBIT**

**<u>VERIFICATION AND DECLARATION OF JENNIFER A SMITH</u>**

Jennifer Smith, states under penalty of perjury:

"My name is Jennifer Smith. I am above the age of eighteen years, and I am fully competent to make this unsworn declaration. I have personal knowledge of the facts contained in this unsworn declaration and all such facts are true and correct.

I am the Program Director for TRELS Home for Children Callahan location. Around 5:00 p.m. on Friday evening I was bringing children into the facility from getting them off the bus when Tara from Heightened Monitoring arrived. It was Friday, November 7, 2025. I expressed to her that Callahan was no longer under Heightened Monitoring at which time she stated that Heightened Monitoring was reinstated a few hours previously. Before Tara showed up at Callahan, I was given no indication that Heightened Monitoring was resuming by either Mrs. Collier, HHS or DFPS. It had been communicated to me that Callahan was no longer under Heightened Monitoring.

It was a busy time of day. The girls were all arriving home from school, some were eating their snacks and starting to complete their hygiene while several of the girls were attempting to speak with me. Several of the girls in the facility were upset by a stranger coming into the facility unexpectedly due to their being in the process of hygiene, dinner, and their chores.

Friday night's visit lasted approximately 2 hours between arrival and her leaving the facility. Staff were distressed as the sudden late evening visit put stress on the girls and due to ratio when Tara wanted to speak with me it added stress of ensuring proper monitoring of the children. Multiple times I reminded Tara that at that point in time I was working the floor and am part of ratio therefore I can not leave the floor in order for her to complete the HM site visit.

No citations were given, Tara expressed that she would allow me to email her the tasks she is requested due to my informing her that I could not go sit in my office in order to get those items for her as the girls needed my supervision.

My name is Jennifer Smith my date of birth is February 19, 1984, my address of record is 1390B Four Notch Rd, Huntsville, Walker County, TX 77340. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Walker County, State of Texas, United States, on _11/11/25_____.

By: _*Jennifer Smith*_____
Jennifer Smith (Nov 11 2025 11:52:10 CST)
Jennifer Smith

*Declaration of Jennifer Smith*
Page 1 of 1

# 25.11.11 Smith, Jennifer Dec

| | |
|---|---|
| Created: | 2025-11-11 |
| By: | Kyle Ferguson (kyle@fergusonlawpractice.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAp_td4B7rDAxSSwKpVEtNT1yZwH1P6FKG |

## "25.11.11 Smith, Jennifer Dec" History

📄 Document created by Kyle Ferguson (kyle@fergusonlawpractice.com)
2025-11-11 - 5:49:11 PM GMT- IP address: 70.113.44.79

✉ Document emailed to jsmith@th4c.org for signature
2025-11-11 - 5:49:15 PM GMT

📄 Email viewed by jsmith@th4c.org
2025-11-11 - 5:49:39 PM GMT- IP address: 66.170.203.75

✍ Signer jsmith@th4c.org entered name at signing as Jennifer Smith
2025-11-11 - 5:52:08 PM GMT- IP address: 66.170.203.75

✍ Document e-signed by Jennifer Smith (jsmith@th4c.org)
Signature Date: 2025-11-11 - 5:52:10 PM GMT - Time Source: server- IP address: 66.170.203.75

✔ Agreement completed.
2025-11-11 - 5:52:10 PM GMT

**EXHIBIT**

**<u>VERIFICATION AND DECLARATION OF LATRICE JONES</u>**

LaTrice Jones, states under penalty of perjury:

"My name is LaTrice Jones. I am above the age of eighteen years, and I am fully competent to make this unsworn declaration. I have personal knowledge of the facts contained in this unsworn declaration and all such facts are true and correct.

I am an Assistant Program Director for TRELS Home for Children, Callahan location. I was not working on the evening of November 7 2025. Around 5:00 p.m. I received a text message notifying me that Heightened Monitoring was at the facility. This surprised me, as during our management retreat last month I was informed we were no longer under heightened monitoring and I had no communication from them to state otherwise.

I was out running errand with my own children. Upon receiving the message, I had to leave the store we were in to travel home and gather documentation requested by the HM representative. After leaving the store, I received another message stating the HM representatives left the facility so I resumed my errands. About 20 minutes later I received another message that they had returned which caused additional stress. The situation was both unexpected and unsettling for me and my family.

My name is LaTrice Jones, my date of birth is July 15, 1980, my address of record is 22902 Highland Bluff Lane, Spring, Texas 77373. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, State of Texas, United States, on November 12, 2025.

By: _LaTrice Jones (Nov 12, 2025 12:31:48 CST)_____
LaTrice Jones

# 25.11.12 Jones, LaTrice Declaration

Final Audit Report                                                 2025-11-12

| | |
|---|---|
| Created: | 2025-11-12 |
| By: | Karen De Alejandro (karen@fergusonlawpractice.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAb9CUJwttJCAjBNp1vaisOwwzhsXIvpmr |

## "25.11.12 Jones, LaTrice Declaration" History

📄 Document created by Karen De Alejandro (karen@fergusonlawpractice.com)
2025-11-12 - 6:30:11 PM GMT

✉ Document emailed to LaTrice Jones (ljones@th4c.org) for signature
2025-11-12 - 6:30:16 PM GMT

📄 Email viewed by LaTrice Jones (ljones@th4c.org)
2025-11-12 - 6:30:38 PM GMT

✒ Document e-signed by LaTrice Jones (ljones@th4c.org)
Signature Date: 2025-11-12 - 6:31:48 PM GMT - Time Source: server

✅ Agreement completed.
2025-11-12 - 6:31:48 PM GMT

![Adobe Acrobat Sign] Adobe Acrobat Sign

**EXHIBIT**

**VERIFICATION AND DECLARATION OF FELICIA OLIVER**

Felicia Oliver, states under penalty of perjury:

"My name is Felicia Oliver. I am above the age of eighteen years, and I am fully competent to make this unsworn declaration. I have personal knowledge of the facts contained in this unsworn declaration and all such facts are true and correct.

I am a Program Manager for TRELS Home for Children, Hondo location. I was at work the evening of November 7, 2025, when Heightened Monitoring unexpectedly arrived. While I understand this location had previously been placed under Heightened Monitoring, my team and I had been informed the Hondo home was no longer subject to this status.

At approximately 5:15 PM, an individual identifying himself as "Mark with Heightened Monitoring Contracts" arrived at the facility. Mr. Mark stated that he was unsure of the reason for his visit and had only been instructed by phone to report to the facility that day. He indicated that he intended to speak with one staff member and one child.

There was initially confusion about whether Heightened Monitoring was supposed to be on site. I was ultimately told to permit the inspection. Mr. Mark was escorted to a designated area, where he met with Nishala Jamison (Treatment Director) and T.J. (child). After those conversations, he requested to review HM Task 2: Child Service Plan Training. He was provided with Felicia Oliver's Case Management Certificate and documentation for HM Task 4: Medication Audit. Mr. Mark reviewed the medication audit for a child, verified the inventory for three of her medications, and confirmed that the medications on hand matched the records. He then reviewed HM Task 6: Daily Communication Logs for all three shifts dated November 6, 2025. Finally, Mr. Mark completed a review of Task 8: Staff File Audits.

Upon completing these tasks, Mr. Mark contacted his supervisor and commended the facility staff for their professionalism and cooperation throughout the process. He provided his supervisor with a summary of his activities and subsequently departed the facility.

My name is Felicia Oliver, my date of birth is November 27, 1983, my address of record is 2307 Gold Forsythia Ln. Spring, TX 77373. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, State of Texas, United States, on November 12, 2025.

By: _Felicia Oliver (Nov 13, 2025 08:22:36 CST)_____
Felicia Oliver

# 25.11.12 Oliver, Felicia Declaration

Final Audit Report 2025-11-13

| | |
|---|---|
| Created: | 2025-11-12 |
| By: | Karen De Alejandro (karen@fergusonlawpractice.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAXjEliewdV9CpbwMiRS7NoD88l44lul3L |

## "25.11.12 Oliver, Felicia Declaration" History

Document created by Karen De Alejandro (karen@fergusonlawpractice.com)
2025-11-12 - 4:28:32 PM GMT

Document emailed to Felicia Oliver (foliver@th4c.org) for signature
2025-11-12 - 4:28:36 PM GMT

Email viewed by Felicia Oliver (foliver@th4c.org)
2025-11-13 - 2:22:01 PM GMT

Document e-signed by Felicia Oliver (foliver@th4c.org)
Signature Date: 2025-11-13 - 2:22:36 PM GMT - Time Source: server

Agreement completed.
2025-11-13 - 2:22:36 PM GMT

Adobe Acrobat Sign

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

John Ferguson
Bar No. 24066597
john@fergusonlawpractice.com
Envelope ID: 108105393
Filing Code Description: Motion for Emergency Relief
Filing Description: Motion for Orders Under TRAP 29.3
Status as of 11/17/2025 10:09 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Chelsea Goodman | | chelsea.goodman@oag.texas.gov | 11/17/2025 10:01:36 AM | SENT |
| Kelsey Hanson | | kelsey.hanson@oag.texas.gov | 11/17/2025 10:01:36 AM | SENT |
| Kyle Ferguson | | kyle@fergusonlawpractice.com | 11/17/2025 10:01:36 AM | SENT |
| John Ferguson | | john@fergusonlawpractice.com | 11/17/2025 10:01:36 AM | SENT |
| Meghan Rudnai | | meghan@fergusonlawpractice.com | 11/17/2025 10:01:36 AM | SENT |